

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PARISS SHEVEE KIMBROUGH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **5:23-cv-00128-LSC** |
| | ) | |
| | ) | |
| | ) | |
| **JOHN HAMM,** | ) | |
| ***Commissioner, Alabama*** | ) | |
| ***Department of Corrections, et al.*** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM OF OPINION

Pariss Shevee Kimbrough ("Kimbrough") is presently confined at Tutwiler Prison in Wetumpka, Alabama. She has submitted, through counsel, a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, and an accompanying brief in support. (Doc. 1.) She challenges, through counsel, the validity of her 2019 capital murder conviction and sentence to life in prison without parole in Madison County, Alabama. Upon thorough consideration of the entire record and the briefs submitted by the parties, the Court finds that Kimbrough's petition is due to be denied.

## I.      FACTS OF THE CRIME

The Alabama Court of Criminal Appeals ("ACCA") summarized the facts of this case in its opinion on direct appeal, as follows:

> Tanicka Kirkland met Nickolis Dean through a woman named Ava. Kirkland and Dean became close friends and eventually started a romantic relationship. While she was dating Dean, Kirkland lived with Dean, Dean's sister, Teleta Dean, and Dean's sister's boyfriend, Christopher Harris, in a two-story apartment with two bedrooms. Dean had a son, X, with Kimbrough. Kirkland did not know Kimbrough well but knew of Kimbrough based on what other people had told her.

> In April 2016, X came to Dean's apartment to visit for approximately five days. On or about April 29, 2016, there was a party at Dean's apartment. Kirkland testified that several people were in and out of the apartment, drinking and using illegal drugs. Teleta, Harris, and a friend, Carmen Robinson, were in the apartment along with X who was upstairs with Kirkland. Kirkland testified that she was smoking marijuana and was aware that Dean sold drugs.

> Kirkland testified that she had seen Kimbrough the night before when Dean had to take Kimbrough home because Kimbrough was "really messed up on something." (R. 129.) According to Kirkland, Kimbrough was unfit to drive and she wanted to take X home with her. Dean took Kimbrough home and did not return until 2:00 a.m. Kirkland testified that she last saw Dean when Dean walked out of the upstairs bedroom he shared with Kirkland and told Kirkland that he was going to go downstairs to smoke a cigarette. By this time, the party had ended. Kirkland stayed in the room and watched television with X. While watching television, Kirkland heard a noise but did not think much of it because "[i]t's projects, so [she] didn't think nothing about it." (R. 131.) At the time, Teleta, Harris, and a group of Teleta's friends were in the other bedroom upstairs. Robinson and Dean were downstairs.

> Approximately five minutes later, Kimbrough came up the stairs in the apartment holding a knife in her hand. Kimbrough pointed the knife at Kirkland and asked Kirkland if she was "Nick's new bitch." (R. 132.) Kirkland said, "No, I am just his close friend." (R. 132.) Kirkland

testified that she believed that if she said yes Kimbrough was going to kill her. Kimbrough, still holding the knife in one hand, grabbed X by the arm and ran downstairs. Kirkland hid in the closet for 10 minutes. Kirkland testified that she eventually got out of the closet because she "knew that [Kimbrough] wasn't supposed to be in the house, and so [she] knew something was wrong." (R. 133.) Kirkland knocked on Teleta's bedroom door and told her that Kimbrough was in the apartment. Kirkland testified that Teleta "got mad and ran downstairs"; Kirkland followed behind her. (R. 133.)

Once downstairs, Kirkland heard someone say that Dean had been stabbed. Kirkland "panicked." (R. 133.) Teleta and Harris dragged Dean into the apartment; Dean was bleeding "really bad." (R. 133.) Kirkland was told to telephone the police and the ambulance before Teleta and Harris fled the scene. Kirkland testified that they did not stay and wait for police because both of them had outstanding arrest warrants. After Kirkland called 911, she and Robinson remained at the apartment. Kirkland testified that Robinson was still on the couch acting like she was asleep. Kirkland subsequently gave a statement to police.

Dean's sister, Teleta, testified that in April 2016 Dean lived with her and Harris. On the day of the murder, Dean was preparing for a party at Teleta's apartment. The party was open to anyone who wanted to come, started around 1:00 p.m., and continued into the evening. Teleta admitted that she was using cocaine the night of the party and that most of the others present at the party were using illegal drugs. Between 15 and 20 people were in and out of the apartment during the party.

Teleta testified that she saw Kimbrough at least three times on the day Dean was stabbed. According to Teleta, Kimbrough wanted to know where X and Dean were and the identity of the woman in Teleta's apartment. Teleta testified that Kimbrough was angry during her last visit to the apartment before the stabbing, and stated that "if she couldn't have [Dean], couldn't nobody have him." (R. 152.)

Teleta first learned something was wrong when Kirkland came into Teleta's room and told her that Kimbrough was in the house. Teleta ran downstairs, went outside, and saw Dean lying face down on the sidewalk in front of her apartment. Dean was still breathing. Teleta and Harris dragged Dean inside the apartment. Teleta told someone to telephone the police before she ran next door to her cousin's apartment. Teleta had no interaction with the police because she was concerned about outstanding warrants for her arrest.

Investigator Frank Rosier with the Huntsville Police Department received a call from dispatch that there had been a stabbing and that the injuries were life-threatening. Based on this information, Investigator Rosler went to the hospital first but was unable to speak to Dean due the severity of Dean's condition at the time he arrived at the hospital. Investigator Rosler then went to Teleta's apartment where he found Kirkland and Robinson. Numerous pictures of the crime scene were taken and admitted by stipulation as evidence at trial. The knife used to stab Dean was not recovered. Investigator Rosler interviewed Kirkland and Robinson after which he developed Kimbrough as a suspect. Police were unable to locate Kimbrough at her apartment or Kimbrough's mother's residence. Another investigator with the police department had contacted Kimbrough's relatives and arranged to meet at a local church. When Investigator Rosler arrived at the church, Kimbrough, X, and members of Kimbrough's family were present. Kimbrough was arrested and transported to the South Precinct for an interview. Investigator Rosler testified that he was unable to obtain a statement from Kimbrough because she was having trouble staying awake. Investigator Rosler ended the interview and Kimbrough was jailed.

While in jail, Kimbrough made several telephone calls. Investigator Rosler testified that inmates are given a passcode that is unique to them and that the passcode is used before the inmate makes a collect call. According to Investigator Rosler, all telephone calls made in the jail are recorded. The caller and the recipient hear a recording at the beginning of the call informing them that the call may be recorded. The recipient of the call has to accept the call before the call is connected. Investigator Rosler testified that Kimbrough made approximately 27 telephone calls while in jail, 5 of which contain

references to the night of Dean's murder. The five telephone calls Investigator Rosler identified that referenced the murder were played for the jury. The calls occurred during a two-day period of time after Kimbrough's arrest. In several of the calls, Kimbrough stated that she stabbed Dean once before she went to get her baby out of the apartment. In one of the calls played for the jury, Kimbrough stated that she was "tired of this shit" and indicated that she went to the apartment "about to do something to everybody in this house." (State's Exhibit No. 329.) She stated that she had been "feeling homicidal lately" and stated that she stabbed Dean, went upstairs in the apartment to Dean's room, "stood over [Kirkland]", and grabbed the baby. (State's Exhibit No. 329.) Kimbrough also stated that she went through Dean's pockets, took his cellular telephone, and left him lying on the ground. [FN 1] In another call, Kimbrough stated that she went to the apartment at 4 a.m., Dean opened the door to the apartment and refused to give Kimbrough the baby. Afterwards, Kimbrough stabbed Dean, went upstairs, woke the "bitch" up, and took her baby. (State's Exhibit No. 329.)

   FN 1.  Police did not recover Dean's cellular telephone.

   Dr. Valerie Green, a medical examiner, with the Alabama Department of Forensic Sciences performed an autopsy on Dean's body. The cause of Dean's death was a stab wound to his chest and the manner of death was homicide. The toxicology report indicated the presence of alcohol, cocaine, and marijuana in Dean's body at the time of his death. Dr. Green believed that Dean was "intoxicated" by the consumption of the three substances. (R. 177.)

(Doc. 7-2 at 1–5; *Kimbrough v. State* (No. CR-19-0247) 339 So. 3d 266 (Ala. Crim.

App. 2020 (unpublished table decision)).

## II.   PROCEDURAL HISTORY

### A.   Kimbrough's Capital Murder Conviction and Direct Appeal

In February 2017, the Madison County Grand Jury returned an indictment charging Kimbrough with capital murder during a burglary in violation of Ala. Code § 13A-5-40(a)(4) (1975). On September 18, 2019, the jury found Kimbrough guilty of capital murder as charged in the indictment. On November 15, 2019, the court sentenced Kimbrough to life without parole.

Kimbrough filed a direct appeal, and her sole contention on appeal was that the trial court erred when it denied her motion for a judgment of acquittal because, she argued, the State failed to prove that Kimbrough committed a burglary during the course of the murder. Kimbrough conceded that she murdered the victim (also referred to herein as "Dean") but argued that the State did not present evidence that she unlawfully entered the apartment with the intent to commit a crime therein. Kimbrough also argued that even if the elements of burglary were met, her capital murder conviction could not stand because "[h]ere the murder did not occur while Kimbrough was in the process of entering the dwelling with the intent to assault another." Instead, Kimbrough argued that her entry into the apartment "constituted a separate, severable offense from the first as an afterthought."

The ACCA affirmed the trial court's decision and held that "the State presented sufficient evidence that Kimbrough unlawfully entered the apartment with the intent to commit a crime." (Doc. 7-2 at 8.) Kimbrough filed an application

for rehearing which was overruled, and her certificate for writ of certiorari was denied. The certificate of judgment was entered on October 16, 2020.

### B.   Kimbrough's Rule 32 Proceedings

On October 12, 2021, Kimbrough filed a postconviction petition pursuant to Alabama Rule of Criminal Procedure 32 alleging that she had been denied effective assistance of appellate and trial counsel. Specifically, Kimbrough claimed: 1) that her trial counsel and appellate counsel should have argued that evidence concerning prior acts of violence of the victim was admissible to show the reasonableness of her acts in furtherance of her defense of self-defense, and that such evidence was not inadmissible character evidence under Alabama Rule of Evidence 404; 2) that her trial counsel should have secured the testimony of a forensic toxicologist that could have explained what effect the amount of drugs and alcohol that were in Dean's system would have had on him at the time of the incident; 3) that her trial counsel failed to object to the trial court's instructions on self-defense; and 4) that her trial counsel failed to request a jury instruction on provocation manslaughter. In support of her petition, Kimbrough attached an affidavit from Dr. Jack R. Kalin, a consultant in forensic toxicology, in which Dr. Kalin provided his interpretation of toxicological findings relating to the victim in the case.

After the State filed a response, the circuit court issued an order summarily dismissing Kimbrough's claim, finding that her petition was untimely under Rule 32.2(c), precluded under Rule 32.2(a), insufficiently pleaded, and meritless. The circuit judge who ruled on Kimbrough's Rule 32 petition was the same judge who presided over her trial.

Kimbrough filed a notice of appeal on November 23, 2021. On appeal, Kimbrough reiterated Claims (1), (2), and (4) that were raised in her petition, but Kimbrough did not reassert Claim (3). Additionally, Kimbrough did not reassert her claims that her appellate counsel was ineffective.

The ACCA affirmed the circuit court's decision on postconviction review. (Doc. 10-1.) Kimbrough filed an application for rehearing, which was overruled. Her petition for writ of certiorari was denied. The certification of judgment was entered on November 10, 2022.

### C.    Federal Habeas Petition

On January 31, 2023, Kimbrough filed, through counsel, the instant petition for writ of habeas corpus raising the following claims of ineffective assistance of trial counsel: 1) trial counsel was ineffective by not calling four witnesses who would have testified to acts of violence perpetrated by the victim to Kimbrough in the past; 2) trial counsel was ineffective for failing to retain a forensic toxicologist; and 3) trial

counsel was ineffective for failing to object to the reckless manslaughter jury instruction and not requesting a provocation manslaughter jury instruction. Respondent filed a response in opposition to habeas relief and included exhibits from the State court record (docs. 4-12), and Kimbrough has replied in support (doc. 13).

## III.   DISCUSSION

### A.   Statute of Limitations

A one-year limitations period applies to federal habeas petitions under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2244(d)(1); *Chavers v. Sec'y, Fla. Dep't. of Corr.*, 468 F.3d 1273, 1274 (11th Cir. 2006). Because Kimbrough sought certiorari review with the Alabama Supreme Court, this limitations period commenced 90 days after the October 16, 2020 certificate of judgment was entered. *See* 28 U.S.C. § 2244(d)(1)(A); *see also Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006).

The statute of limitations commenced on January 14, 2021 and ran for 271 days until Kimbrough filed a Rule 32 petition on October 12, 2021. The one-year limitation period is tolled, during the time that a "properly filed" state postconviction petition is pending. *See* 28 U.S.C. § 2244(d)(2). After Kimbrough's petition for writ of certiorari was denied, the certificate of judgment was issued on

November 10, 2022. Thus, Kimbrough's federal habeas petition filed 82 days later on January 31, 2023 is timely.

## B.    Exhaustion and Procedural Default

Before this Court may reach the merits of Kimbrough's claims, she must have exhausted the remedies available in state court. "Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. 28 U.S.C. § 2254(b)(1)." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). A claim for federal habeas corpus relief is not exhausted so long as a petitioner "has the right under the law of the State to raise by any available procedure, the question presented." 28 U.S.C. § 2254(c); *see also Rose v. Lundy*, 455 U.S. 509, 518 n.9 (1971). To that end, "state prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Kimbrough raised these claims in her Rule 32 petition, in her brief on appeal of her Rule 32 petition, and in her petition for writ of certiorari filed with the Alabama Supreme Court. Thus, the claims are exhausted.

## C.    Merits

This Court must give deference to the Alabama courts' decision "unless the state court's adjudication of the claim resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86 (2011); *Diaz v. Sec'y for the Dep't of Corrs.*, 402 F.3d 1136, 1141 (11th Cir. 2005) (recognizing that after enactment of the AEDPA, review of the state courts' decision is limited). A state court's decision is "contrary to" clearly established federal law if it contradicts a rule established by the Supreme Court or contradicts the holding of a Supreme Court case with materially indistinguishable facts. *See Osborne v. Terry*, 466 F.3d 1298, 1305 (11th Cir. 2006). The state court's decision is an "unreasonable application" of federal law "if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." *Id.*

As discussed in further detail below, the Alabama courts' decisions in Kimbrough's case are not contrary to, and do not involve an unreasonable application of, clearly established federal law. The clearly established federal law applicable is *Strickland v. Washington*, 466 U. S. 668 (1984). Under *Strickland*, a convicted defendant claiming that her counsel rendered ineffective assistance must show, first, that her counsel's performance was deficient. That is, she must

demonstrate that her counsel's representation fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Second, she must show that her counsel's deficient performance prejudiced her case. *Id*. A convicted defendant claiming ineffective assistance of counsel must show both prongs of this standard to prevail on a claim of ineffective assistance. *See id*. at 687. "[F]ailure to show either deficient performance or prejudice is fatal to a *Strickland* claim," and a court need not address both prongs of *Strickland* where a petitioner fails to satisfy either prong. *Lucas v. Secretary, Dep't of Corr*., 682 F.3d 1342, 1355 (11th Cir. 2012).

According to Kimbrough, her trial counsel was ineffective for: 1) not calling four witnesses who would have testified that they had personally seen the victim, Dean, commit acts of violence against Kimbrough in the past; 2) failing to retain a forensic toxicologist who could have explained the effect that the amount of drugs and alcohol that Dean had in his system at the time of the incident would have had on his behavior that night; and 3) failing to object to the reckless manslaughter jury instruction that was given and not requesting a provocation manslaughter jury instruction. (Doc. 1.) Each claim of ineffective assistance of counsel is addressed in turn.

> **1.      *failure to call witnesses who would have testified to prior acts of violence perpetrated by the victim***

Kimbrough claims that her trial counsel should have called four witnesses, who were present at the trial, to testify about times when they witnessed Dean acting with violence towards Kimbrough in the past, and that her counsel could have argued to the trial court that such evidence was not character evidence about the victim's propensity for violence under Alabama Rule of Evidence 404(a)(1), which would have opened the door to allow the State to introduce the same trait of character evidence of Kimbrough, but was instead admissible to show under Ala. Code § 13A-3-23(a)(3) that Kimbrough reasonably believed that Dean was committing or about to commit an assault in the first or second degree against her when she stabbed him and thus acted in self-defense, and Dean was the initial aggressor.

Kimbrough raised this claim in her Rule 32 proceedings, and on appeal from the circuit court's denial of Kimbrough's Rule 32 petition, the ACCA held as follows:

> Kimbrough also reasserted the claim raised in her petition that her counsel was ineffective for failing to argue to the circuit court "that [her] evidence concerning acts of violence of the victim were not an attempt to introduce evidence of character under [Rule 404, Ala. R. Evid.,] but rather to show the reasonableness of [her] actions in furtherance of her defense of self-defense." (C. 11.) Kimbrough claimed she had four witnesses that would have testified that they had personally observed the victim commit specific acts of violence against her prior to this incident, and that their testimony was "admissible to show under § 13A-3-23 that she reasonably believed that another person was committing or about to commit an assault in the first or second degree." (C. 16.) Kimbrough insisted in her petition that "this

argument would have convinced the [circuit] court to allow this admissible evidence without giving the State the right to bring in [Rule 404] evidence against [her.]" (R. 16.)

Contrary to Kimbrough's assertions, our review of the portions of the record that Kimbrough included in her petition from her trial indicates that counsel did, in fact, make this argument and the circuit court still informed counsel that the court would still allow the State to question Kimbrough on her previous convictions based on his understanding of the law. As Kimbrough noted in her petition, her counsel made the following argument to the circuit court during a discussion on this issue:

> "[Defense Counsel:] You [sic] Honor, looking at 404, and its 2013 amendment, the accused generally would have the right to prove a pertinent trait of the victim in a homicide case, i.e., propensity for violence. The Defendant would always have that right. That would, of course, under the 2013 amendment, open the door to specific – testimony about a specific trait of character with respect to Ms. Kimbrough, that is, i.e., propensity for violence.

> ". . . .

> "But her describing her relationship with [the victim], including abusive incidents before the night of this, goes to her argument of self-defense and her experience. And it's really - I don't think it's a character issue."

(C. 12.) Therefore, because Kimbrough's counsel raised the claim that Kimbrough argued in her petition that counsel should have raised, Kimbrough's claim was meritless and/or insufficiently pleaded because she failed to plead facts indicating that counsel's performance was deficient or that the result of the proceeding would have been different, but for counsel's performance.

We note that, in her brief on appeal, Kimbrough insists that the testimony from the witnesses was not character evidence, and thus,

would have been admissible. However, the argument raised in her petition was that her counsel was ineffective for failing to raise the argument, which is refuted by the record. Thus, Kimbrough is not entitled to relief on this claim.

(Ex. L at 15-17.)

Kimbrough has failed to show that the state court resolved these claims in a manner that is contrary to clearly established federal law, i.e., *Strickland*, or that the decision was based on an unreasonable determination of the facts. Kimbrough argues that the ACCA based its decision on an unreasonable determination of the facts when it concluded that Kimbrough's counsel did in fact raise at trial the same argument that she then argued on postconviction review that he should have raised. According to Kimbrough, this is because there is no record that her counsel ever argued to the trial court that he had four witnesses who could testify as to specific acts of violence by Dean but was only arguing about her own testimony.

An examination of the trial record indeed shows that a similar issue was discussed at trial, not with regard to having third party witnesses testify, but rather with regard to having Kimbrough testify in her own defense. The State filed an oral motion concerning the defense putting on evidence concerning acts of violence by Dean against Kimbrough. The issue was whether, if Kimbrough testified about Dean's prior acts of violence towards her, that would open the door for the State to cross examine her about the times that she had been arrested for domestic violence

and another conviction stemming from her stabbing someone. The following

exchange occurred shortly after the portion quoted by the ACCA in its opinion,

above:

| | |
|---|---|
| Defense counsel: | I need clarification, Your Honor. If Ms. Kimbrough testifies as to the nature of her relationship with Mr. Dean and talks about the violence, is The Court's ruling that Ms. Kimbrough's prior convictions then become relevant? |
| The Court: | As they relate to her propensity for violence. |
| Defense Counsel: | Right. |
| The Court: | That is my understanding of the current t law. |
| Prosecutor: | I mean, I plan on asking her, "Haven't you been arrested a couple of times for domestic violence yourself?" Weren't you convicted for stabbing someone yourself?" Once she says he is violent, her history of violence becomes relevant. |
| The Court: | I still don't think that takes away her right to self-defense in this case. |
| Prosecutor: | It doesn't. |
| The Court: | I mean, certainly, I understand why you would not want that before the Jury, but I think it's fair game, so I am going to allow him to question --- |
| Defense Counsel: | Wait, wait. Who would – he would be allowed to question her about her previous convictions? |

| The Court: | Yes. If she is going to put propensity for violence at issue in that relationship, I think her propensity is relevant. |
|---|---|
| Defense Counsel: | All right. |

(Doc. 11-1 at 159–64.) Kimbrough decided not to testify. She now argues that despite her decision not to testify, her counsel could have still called the four witnesses whose testimony would have been relevant to her self-defense defense. However, she made this argument about the four witnesses to the Rule 32 courts, and they still found that her argument that her counsel failed to raise the argument was refuted by the record.

Regardless, even if this Court were to address this specific claim—not about Kimbrough testifying but about her counsel bringing in four other witnesses to testify—*de novo* because it was never addressed by the Alabama courts, relief would not be warranted. Kimbrough is simply not able to meet the high burden of establishing deficient performance on behalf of her trial counsel because he failed to call the additional witnesses. "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir.1980). On this record, the Court cannot say that trial counsel's decision not to call these witnesses

was deficient. Although "[a] lawyer can almost always do something more in every case . . . the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

Accordingly, Kimbrough is not entitled to federal habeas relief on this claim.

### 2.    *failure to secure a forensic toxicologist*

Kimbrough raised this claim in her Rule 32 proceedings, and on appeal from the circuit court's denial of Kimbrough's Rule 32 petition, the ACCA held as follows:

> The decision as to whether certain witnesses should be called is often a matter of trial strategy that should be left to the decision of the trial counsel. *Ex parte Arthur*, 711 So. 2d 1097, 1100 (Ala. 1997) ("It is not for this Court to second-guess trial tactics or strategy. *See United States v. Long*, 674 F. 2d 848, 855 (11th Cir. 1982) (stating that appellate courts should not second-guess trial tactics such as decisions regarding which witnesses should be called to testify)"). "Matters of trial tactics and trial strategy are rarely interfered with or second guessed on appeal." *Arthur v. State*, 711 So. 2d 1031, 1089 (Ala. Crim. App. 1996), aff'd, 711 So. 2d 1097 (Ala. 1997). Thus, it was incumbent on Kimbrough to plead sufficient facts in her petition showing that her trial counsel's decision was not reasonable trial strategy. Kimbrough failed to do so.

> Although Kimbrough insists that the testimony from Dr. Kalin would have been significant, new information that was necessary to her defense, the record from trial indicates that the medical examiner provided testimony that the victim would have been very intoxicated because of the mixture of the drugs and alcohol in his system. Thus, Dr. Kalin's testimony, although perhaps a little more detailed explanation of the nature of a "very intoxicated" state, appears to be merely cumulative to other evidence presented at trial. *See Ferguson v. State*, 13

So. 3d 418 (Ala. Crim. App. 2008) (trial counsel not ineffective for failing to present cumulative evidence). Regardless, Kimbrough has not pleaded sufficient facts necessary to establish that Dr. Kalin's testimony would have altered the outcome of her trial. Kimbrough's allegation of prejudice regarding this specific claim is nothing more than a baseless allegation of prejudice, without specific facts indicating how the petitioner was prejudiced. *See Hyde*, 950 So. 2d at 355-56. Thus, she is not entitled to relief on this claim.

(Ex. L at 13-15.)

Kimbrough has failed to show that the state court resolved these claims in a manner that is contrary to clearly established federal law, i.e., *Strickland*, or that the decision was based on an unreasonable determination of the facts. Kimbrough argues that although the medical examiner testified that Dean had alcohol, cocaine, and marijuana in his blood at the time of his death, and that Dean was "high," the medical examiner could not say to what degree Dean was intoxicated. Kimbrough argues that in order to properly assert the defense that she acted in self-defense in killing Dean, Dr. Kalin was needed to explain to the jury what effect the drugs and alcohol would have on Dean's behavior that night. Kimbrough contends that Dr. Kalin could have testified that it is possible that the alcohol and cocaine levels at the time of Dean's death could have been higher than reported in the autopsy report, and that cocaine by itself diminishes inhibitions, increases excitability, and predisposes the subject to unpredictable and nonrational aggressive behavior and

performance. Thus, Kimbrough argues that failure to retain Dr. Kalin was ineffective performance.

However, and as Kimbrough acknowledges, while counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, "this duty only requires a reasonable investigation." *Singleton v. Thigpen*, 847 F.2d 668, 669 (11th Cir. 1988), cert. denied, 488 U.S. 1019 (1989). *See Strickland*, 466 U.S. at 691. Counsel's obligation is to conduct a "substantial investigation into each of the plausible lines of defense." *Strickland*, 466 U.S. at 681. "A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made." *Id.* at 686. It was not an unreasonable interpretation of *Strickland* for the ACCA to have found that Dr. Kalin's proposed testimony would have just been cumulative of what the medical examiner had already told the jury. The jury was told that Kimbrough's victim was "high" during the incident, and from that information they could have inferred that he may have been acting erratically himself. There does not appear to be an eyewitness account of the actual physical exchange between Kimbrough and Dean, so any further testimony as to his behavior while "high" would have been speculation in any event.

Nor was it unreasonable that the ACCA found that Kimbrough failed to establish prejudice, *i.e.*, that hearing Dr. Kalin's proposed testimony would have changed the outcome of her trial. The jury heard testimony that Dean drove Kimbrough home but that later, Kimbrough returned to the apartment wielding a knife. She stated in recorded phone calls from the jail that she was feeling "homicidal lately," that she was "tired of this shit," and that she was going to the apartment "about to do something to everybody in this house." It was not unreasonable for the state courts to have found that further testimony about Dean's behavior would not have resulted in a self-defense verdict.

### 3.    *failure to object to reckless manslaughter jury charge and failure to request provocation manslaughter jury charge*

Kimbrough raised this claim in her Rule 32 proceedings, and on appeal from the circuit court's denial of Kimbrough's Rule 32 petition, the ACCA held as follows:

> Kimbrough's first claim on appeal is that her trial counsel was ineffective for failing "to object to the court charging the jury on reckless manslaughter when there was no evidence to support a charge of reckless manslaughter." (Kimbrough's brief, at 11.) As the State points out in its brief on appeal, Kimbrough did not actually raise this specific issue in the circuit court. As part of her argument that her trial counsel was ineffective for failing to request a jury charge on provocation manslaughter, Kimbrough stated that "trial counsel allowed, without objection, for a charge on reckless manslaughter to be given, when in reality the facts never warranted that charge," and she claimed that her actions "could not have been construed to be

reckless," (C. 11), Kimbrough did not argue that her counsel was ineffective for failing to object to the reckless manslaughter charge. Therefore, because this specific claim was not raised in the circuit court, this claim is not properly before this Court for review. *See Chambers v. State*, 884 So. 2d 15, 19 (Ala. Crim. App. 2003) (an appellant may not raise for the first time on appeal an issue not presented in his Rule 32 petition to the trial court). Moreover, to the extent that such statements in Kimbrough's petition should be construed as a claim that her counsel was ineffective for failing to object to the court's reckless-manslaughter instruction, this claim was insufficiently pleaded. *See Hyde*, 950 So. 2d at 355-56.

. . .

Next, Kimbrough alleges that her counsel was ineffective because counsel failed to request a jury instruction on provocation manslaughter. This Court has explained that

> " 'a "request for jury instructions is a matter of trial strategy and, absent a clear showing of improper or inadequate representation, is to be left to the judgment of counsel." ' *Maxwell v. State*, 620 So. 2d 93, 97 (Ala. Crim. App. 1992) (quoting *Parker v. State*, 510 So. 2d 281, 286 (Ala. Crim. App. 1987)). 'Trial counsel should have the broadest discretion in all matters of trial strategy.' *Vinson v. State*, 494 So. 2d 175, 177 (Ala. Crim. App. 1986). '[E]ven if the evidence supports jury instructions on lesser included offenses, the failure of counsel to request charges on the pertinent lesser included offenses does not necessarily render counsel's assistance ineffective.' *Parker*, 510 So. 2d at 286."

*Clark v. State*, 196 So. 3d 285, 310-11 (Ala. Crim. App. 2015).

Here, Kimbrough alleged that counsel was deficient because there was evidence that she stated in a tape-recorded jail statement that she stabbed the victim, "but only after he had assaulted her," which she claims was a "classic example of provocation manslaughter." (C. 21.) Kimbrough claims that "if the charge [for provocation manslaughter] would have been given, [she] would have been convicted of

[provocation manslaughter.]" (C. 21.) First, we question whether Kimbrough pleaded sufficient facts establishing that counsel's performance was deficient by failing to request a jury charge on provocation manslaughter. Even if the evidence at trial warranted such an instruction, counsel's failure to request such a charge does not necessarily render his performance deficient. However, even assuming that Kimbrough's counsel was deficient, Kimbrough's mere conclusion of prejudice in her petition, without more, is not sufficient to meet her pleading requirements that there was a reasonable probability that, but for counsel's failure to request an instruction on provocation manslaughter, the result of her trial would have been different. Thus, because Kimbrough's claim was insufficiently pleaded, this claim does not entitle her to relief.

(Ex. L. at 11-12.)

A Rule 32 dismissal for failure to plead a claim with sufficient specificity is a merits ruling in this circuit, to which the 28 U.S.C. § 2254(d) presumption attaches. *Borden v. Allen*, 646 F.3d 785, 812-13 (11th Cir. 2011). Kimbrough must thus show that the state courts resolved this claim in a manner that is contrary to clearly established federal law, i.e., *Strickland*, or that the decision was based on an unreasonable determination of the facts.

Kimbrough argues that the facts of her case fit the crime of provocation manslaughter, Ala. Code § 13A-6-3(a)(2), rather than reckless manslaughter, Ala. Code § 13A-6-3(a)(1), and so her trial counsel was ineffective for failing to request such an instruction. Based on Kimbrough's recorded jailhouse phone calls, in which she stated that she stabbed Dean after he assaulted her, and mentioned that there

had been a history of domestic violence, the trial court charged the jury on self-defense and reckless manslaughter in addition to capital murder. The trial court instructed the jury that in order to convict for reckless manslaughter, it had to find that 1) Dean is dead; 2) Kimbrough caused the death of Dean by stabbing him with a knife; and 3) in causing the death of Dean, Kimbrough acted recklessly. The trial court further explained to the jury that a person acts recklessly in regard to her conduct "if the actor is aware that there is a substantial and unjustifiable risk that death will occur; [ ] that the risk of death is so great that the actor's failure to recognize this risk is a gross deviation from the standard of behavior to which a reasonable person would hold herself in the same situation; and [ ] that the actor consciously disregarded the substantial and unjustifiable risk." The jury, of course, convicted Kimbrough of capital murder, not reckless manslaughter.

"Alabama courts have [ ] recognized three legal provocations sufficient to reduce murder to manslaughter: (1) when the accused witnesses his or her spouse in the act of adultery; (2) *when the accused is assaulted or faced with an imminent assault on himself*; and (3) when the accused witnesses an assault on a family member or close relative." *Rogers v. State*, 819 So.2d 643, 662 (Ala. Crim. App. 2001) (emphasis added). Additionally, "A person does not commit murder under subdivision[ ](a)(1). . . of [§ 13A–6–2] if he or she was moved to act by a sudden heat of passion caused

by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself." Ala. Code § 13A–6–2(b) (1975). Kimbrough now argues that her case fits into the second category of provocation manslaughter because Dean assaulted her before she stabbed him, and there was no time for her to cool down and for reason to reassert itself. She argues that the evidence supported such an instruction because the State introduced recorded telephone calls that Kimbrough made from jail to a friend. In those calls she stated that she stabbed the victim one time, but only after he assaulted her. She also mentioned that there had been a history of domestic violence.

Aside from the fact that a request for a certain jury instruction is an inherently strategic decision on the part of counsel, and thus not usually subject to being overturned under *Strickland*, it was also not unreasonable that the ACCA found that Kimbrough did not establish prejudice under *Strickland*. She made no showing that had counsel requested such an instruction, that the trial court would have agreed to give it, or that the jury would have found her guilty of provocation manslaughter rather than capital murder. The jury was entitled to find Kimbrough's statement that she stabbed Dean only after he assaulted her not entirely credible, and in fact they could have found more credible her other statements which indicated that she re-entered the apartment with a knife with an intent to commit a homicide. There is no

guarantee that the outcome of her trial would have been different had the jury been instructed on provocation manslaughter.

Accordingly, Kimbrough is not entitled to federal habeas relief on this claim.

## V.    CONCLUSION

For all of the reasons set forth herein, Kimbrough's petition for writ of habeas corpus is due to be dismissed, or in the alternative denied.

Rule 11(a) of the Rules Governing Section 2254 Cases requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). This Court finds that Kimbrough's claims do not satisfy either standard. Accordingly, a motion for a certificate of appealability is due to be denied.

A separate order in accordance with this opinion will be issued.

**DONE** and **ORDERED** on March 22, 2024.

_____
L. Scott Coogler
United States District Judge

160704